**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-60331-CIV-MOORE/SIMONTON**

**ISMAEL RICHARD SOTO,**

      **Plaintiff,**

**v.**

**GENENTECH, INC.,**

      **Defendant.**
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO**
**COMPEL RESPONSES TO ITS FIRST SET OF INTERROGATORIES AND**
**ITS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, AND**
**DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

      Presently pending before the Court is Plaintiff's Motion to Compel Discovery (DE # 25), which is referred to the undersigned Magistrate Judge (D.E. 25).   The Defendant filed a Response to the Motion (D.E. 35) and Plaintiff filed a Reply (D.E. 36).  A hearing on the Motion to Compel was held on October 1, 2008, and this Order incorporates rulings made at that hearing, as well as, rulings based upon the Parties' submissions and the Defendant's post-hearing submissions.

      For the reasons stated below, Plaintiff Ismael Richard Soto's Motion to Compel is granted, in part and his Motion for Sanctions is denied.  All discovery required by this Order shall be provided on or before October 31, 2008.

I.    **Background**

      Ismael Richard Soto ("Soto") proceeds on his two-count complaint, in which he asserts a claim for national origin discrimination (Count I) and retaliation (Count II) both in violation of the Florida Civil Rights Act, ("FRCA")(Fla. Stat.  §§ 760.01 et seq.) (D.E. 1).

The underlying facts of this case as set forth in the complaint are as follows.  Beginning on or about December 13, 2004,  Mr. Soto, who is of Puerto Rican descent, was hired as a clinical specialist by Defendant Genentech, a pharmaceutical company with its principal address in San Francisco, California  (DE # 1 at 10).   In that capacity, Mr. Soto was responsible for selling the  growth hormone drug Nutropin, in the Southern Florida territory.  Plaintiff alleges that approximately four months after he began his employment with Genentech, a co-worker, of Cuban descent, began making discriminatory comments about Puerto Ricans (D.E. 1 at 10).    Mr. Soto alleges that after he made a complaint to human resources manager, Jill Genelza,  regarding his co-worker's comments,  he began to be treated differently by his manager, Kenneth Stevens, who was, at times, present when the co-worker made the discriminatory comments (D.E . 1 at 11).   Mr. Soto alleges that Genentech's human resources department failed to pursue his complaint diligently and, a month after he made his complaint, Mr. Stevens gave him a negative performance review and told Mr. Soto that he was angry at him for making the discrimination complaint.  Mr. Stevens also allegedly told Mr. Soto that  Ms. Genelza referred to Mr. Soto, among other things, as a "troublemaker" (D.E. 1 at 12).   A few months later, Mr. Soto was terminated by his Manager, Mr. Stevens, and his Regional Manager, Craig Helms.  Mr. Soto alleges that his managers told him that he was being terminated for violating company policy, guidance policies created by the Pharmaceutical Research and Manufacturers of America (PhRMA), regulations issued by the Food and Drug Administration (FDA) and the Office of Inspector General's Compliance Program Guidance for Pharmaceutical Manufacturers (OIG), for providing to one of the physicians in Mr. Soto's sales territory, a list of insurers that may cover Nutropin use for patients, and a letter explaining why Nutropin was a better choice for

2

growth hormone therapy.  Soto alleges that he was actually fired in retaliation for his discrimination complaint (D.E. 1 at 12).

In its Answer, Genentech admits that the Plaintiff made a complaint to Jill Genelza concerning a co-worker but stated that Plaintiff was "informed" of his termination by Kenneth Stevens and Craig Helms after he admitted that he had disseminated promotional materials which had not been created or approved in accordance with defendant's "Healthcare Compliance Practices."

Contemporaneously with its complaint, Plaintiff served its first set of interrogatories and requests for production on Defendant which were responded to on May 19, 2008 and June 2, 2008, wherein Defendant raised several objections to various requests.   On July 23, 2008, Plaintiff filed a Motion to Compel responses to six of Genentech's  interrogatory responses and thirteen requests for production (D.E. 25).  On August 18, 2008, Defendant served its Amended Responses to Plaintiff's Requests and on August 25, 2008 filed a Response to Plaintiff's Motion to Compel (D.E. 35).  On August 29, 2008, Plaintiff filed a Reply to Defendant's Response to the Motion to Compel (D.E. 36).

On October 1, 2008,  the undersigned held a hearing on Plaintiff's Motion to Compel.  At the hearing, after the Parties presented their respective arguments,  the undersigned inquired as to the number of clinical specialists employed by Genentech in the North Carolina-Florida region and was informed that counsel did not have the exact number but would be able to obtain the information.  The undersigned also inquired about the number of retaliation claims made nationwide as compared to those made in this region.  The undersigned also noted that the Defendant failed to produce evidence regarding the burdensomeness of responding to Plaintiff's discovery requests.  The

undersigned therefore directed the Defendant to file supplemental declarations to respond to the issues raised at the hearing.

On October 3 and 8, 2008, the Defendant filed supplemental declarations in compliance with this Court's Order.  The undersigned has reviewed the supplemental filings, and considered the other submissions from the Parties, as well as, the arguments made at the hearing, and is now ready to rule upon the Plaintiff's Motion to Compel.

II.    <u>Analysis</u>

The central issue in dispute in this matter is the scope of discovery that Plaintiff is entitled to under the facts of this case.  In its Motion to Compel, Plaintiff argues that pursuant to Fed.R.Clv.P. 26(b),  he is entitled to any non-privileged discovery that is relevant to his claims (D.E. 25 at 20).

A.    General Objections

In its Opposition to Plaintiff's Motion to Compel, Genentech raises several general arguments regarding the appropriate scope of discovery in employment discrimination cases, such as the one at bar (D.E. 35).  First, Genentech asserts that the discovery in this matter should be limited geographically to Plaintiff's employment unit. Genentech next argues that the relevant time period for purposes of discovery is between December 2004 through May 2006 when Plaintiff worked for Genentech and was supervised by Craig Helms and Kenneth Stevens.   Third, Genentech asserts that discovery should be limited to Plaintiff's similarly situated comparators which, according to Genentech, are those persons within Plaintiff's employment unit who violated the same policy as Plaintiff.  Finally, Genentech asserts that discovery should be limited to previous complaints or charges against Genentech of the same type made

4

by Plaintiff; i.e.,  harassment on the basis of national origin and retaliation for claiming harassment on the basis of national origin and maintains that discovery into other forms of discrimination have no relevance to the issues presented in this case.

Initially, the undersigned notes that Federal Rule of Civil Procedure 26 provides that the proper scope of discovery is not limited to information admissible at trial, but can also include information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).   The Rule authorizes a court to limit discovery where such discovery is cumulative or duplicative, and the discovery is "unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1558-59 (11th Cir. 1985).  Further, the party resisting discovery must show specifically how  each discovery request is not relevant or how each question is overly broad, burdensome or oppressive. *Id.*

The court will now examine each of Genentech's general objections to Plaintiff's discovery requests, in turn.

       1)    **Geographic Scope of Discovery**

In its Motion to Compel and Reply, and again at the hearing on the Motion to Compel, the Plaintiff argued, *inter alia*, that the geographic scope of discovery should extend to decision makers at Genentech's national office,  as certain managers and human resources employees in San Francisco were also involved in decisions regarding Mr. Soto's employment.  In particular, Plaintiff asserts that Lisa Brock, Genentech's then-Director of Sales, and Jill Genelza, Senior Human Resources Manager, were both involved in the decision to terminate Mr. Soto. *See,* (D.E. 25 at 5; D.E. 36 at 1-2).  Plaintiff

**5**

points to an exchange of e-mails regarding Mr. Soto's termination between Ms. Brock and Ms. Genelza to support this claim. *See*, (D.E. 25-7, 25-8).

In response, Genentech argues that the geographic scope of discovery in employment discrimination cases is limited to a  plaintiff's work unit (D.E. 35).  Thus, Genentech asserts that in this case, the proper geographical scope should be limited to the group of clinical sales specialists that were supervised by Craig Helms and Kenneth Stevens.   In addition, Genentech argues that the decision to terminate Mr. Soto was made only by Mr. Helms and Mr. Stevens and therefore, nationwide discovery of Genentech is not appropriate, as the decision makers were located in the sales region that extends from North Carolina to Miami, Florida.  In support of this position, Genentech has submitted the Affidavit of Jill Genelza, wherein she states that she did not make the decision to terminate Richard Soto and did not have the authority to terminate Mr. Soto or any other clinical sales specialists (D.E. 35-5), and the Affidavit of Craig Helms, wherein he states that he made the final decision to terminate Richard Soto (D.E. 35-4).

In addition, the Defendant cites to *Earley v. Champion Int'l, Corp.*, 907 F.2d 1077 (11th Cir. 1990) for the holding that discovery in employment discrimination cases should be limited to the plaintiff's work unit, if the employment decisions, at issue were made at the local level.  In *Earley*, the Eleventh Circuit affirmed a district court's denial of a plaintiff's request to compel nationwide discovery in an age discrimination case. *Id.*  In so doing, the Eleventh Circuit stated, in relevant part, "[w]here, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit." *Id.* at 1084.  Further, the reviewing court noted that the district court found the request for nationwide discovery to be unduly burdensome on the defendant and further, stated

6

"[a] vague possibility that loose and sweeping discovery might turn up something suggesting that the [actions were] discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry". *Id.* at 1084-85 (citing *Joslin Goods Co., v. EEOC*, 483 F. 2d 178, 183-84 (10th Cir. 1973)).

Plaintiff argues that Ms. Genelza's Affidavit is insufficient to demonstrate that she was not involved in the decision to terminate Mr. Soto.  In this regard, Plaintiff asserts that he has a right to discovery to develop a "cat's paw" theory which does not allow an employer to escape liability where the decision maker merely "rubber stamps" the recommendation of the harasser. *See, e.g.  Harkins v. AirTran Airways, Inc.*, 237 Fed.Appx. 513, 521 n.5  (11th Cir. 2007)(explaining under cat's paw theory, if a plaintiff shows that colleague with racial animus lacked power to terminate employee, but colleague made biased recommendation to superior that the employee be discharged and that recommendation was followed, it may be inferred that it was the colleague's racial animus was the cause in fact of the termination...the superior who carries out the adverse employment action acts merely as the "cat's paw" for the person with the discriminatory animus).  However, this is not a cat's paw case, as there is no implication that the alleged harasser, who according to Plaintiff's complaint was a co-worker of Mr. Soto, made a recommendation to terminate Mr. Soto, that was "rubber stamped" by Plaintiff's managers.  Thus,  this is not a case where the decision makers acted as a mere conduit for the harasser's discriminatory animus. *See, Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249  (11th Cir. 1998).

Similarly, to the extent that the Plaintiff asserts that his managers acted as the "cat's paw" in relation to  Ms. Genelza, again the analysis is inapplicable as well, as the

7

only evidence is to the contrary  that Ms. Genelza recommended that Mr. Soto be terminated for an infraction, that Mr. Stevens and Mr. Helms failed to investigate the alleged infraction, and merely "rubber stamped" Ms. Genelza's biased recommendation. Indeed, courts have held that where a decision maker terminates or disciplines an employee after an independent investigation by that decision maker, a plaintiff is unable to demonstrate that the termination was caused by the biased recommendation and thus is unable to establish "cat's paw" theory liability. *See, Tucker v. Talladega City Schools*, 171 Fed.Appx. 289 (11th Cir. 2006)(holding that "cat's paw" theory not demonstrated where board with power to terminate employee conducted hearing into recommendation from allegedly biased superintendent) *Accord*, *Stimpson v. City of Tuscaloosa*, 186 F. 3d 1328, 1331 (11th Cir. 1999).  In this case, notwithstanding any bias motives that Ms. Genelza may have held, the Plaintiff has not shown that Plaintiff's managers were not the initial source of the allegation that Plaintiff violated Genentech procedures, and failed to independently determine if a violation occurred.  Thus, Plaintiff is not entitled to national discovery based upon this theory.

Moreover, Plaintiff has not demonstrated that the decision to terminate Mr. Soto extended beyond the decision makers in the North Carolina to Florida region, Mr. Helms and Mr. Stevens.   Rather, the materials submitted by the Plaintiff on this issue do not demonstrate that Lisa Brock had any input as to Mr. Soto's termination, but rather merely "signed-off" on the termination form for Craig Helms, who was apparently not available.  Similarly, although Jill Genelza was  involved in the initial investigation of Mr. Soto's discrimination claim and perhaps spoke to the Plaintiff's Managers regarding his termination, it does not appear that she had the authority nor initiated any action to terminate Mr. Soto and thus, her involvement, if any,  does not raise the inference that

Genentech's national management was involved in the decision to terminate Mr. Soto. Also, the e-mail between Craig Helms, Kenneth Stevens and Stacey Miller, which Plaintiff introduced at the hearing which is bate-stamped DP9000068, confirms that Mr. Helms and Mr. Stevens, rather than human resources, were familiar with the circumstances and dates leading to Mr. Soto's termination, and thus again it appears that Mr. Soto's termination was not made by the national office.  Thus, as in *Earley*, the employment decisions regarding Mr. Soto were made locally, and, absent an additional showing, discovery shall be limited accordingly.

Further, in Jill Genelza's supplemental declaration,  she indicates that Genentech employs in excess of 850 employees in the position of Clinical Specialists, and/or Senior Clinical Specialists and Territory Managers, nationally  (D.E. 41-2).  Thus, absent additional information demonstrating the involvement of Genentech national personnel in Mr. Soto's termination, discovery on a national level is likely irrelevant and unduly burdensome.

Defendant also seeks to limit the geographic scope of Plaintiff's requests regarding Genentech employees who may have been disciplined or terminated. Defendant asserts that the relevant context in which Plaintiff must demonstrate disparate treatment is within his own employment unit and not within Genentech as a whole. (D.E. 35 at 4).  However, whether the Plaintiff should be allowed to inquire about Genentech employees beyond his own unit,  is determined, in certain circumstances, by the number of employees in Plaintiff's employment unit.  In *Adkins v. Christie*, 488 F. 3d 1324 (11th Cir. 2007), for example,  the Eleventh Circuit reversed a district court's decision to limit the scope of discovery sought by a plaintiff-physician in a civil rights action to those physicians in the plaintiff's department as opposed to all physicians at

the medical center where plaintiff worked.  The reviewing court reasoned that while the plaintiff's unit was an autonomous unit within the hospital, some of infractions at issue arose from hospital-wide rules and given the limited number of physicians in the plaintiff's department, plaintiff was unable to place his case in the context of the larger disciplinary process at the hospital. *Id. at 1330-31.*

It is for this reason that at the hearing, the undersigned sought additional information regarding the number of employees in Plaintiff's employment unit. The Defendant has now submitted a supplemental Declaration in response to this court's inquiry which indicates that between December 13, 2004 and the present, Craig Helms had forty-nine employees reporting to him, not including division managers. *See,* [D.E. 45-3].   In addition, the Defendant has filed a supplemental Declaration of Jill Genelza wherein she states, "...[a]t any given point in time, there are 20-30 Clinical Specialists or Senior Clinical Specialists reporting to the four Division Managers who report to Mr. Helms."[1]  Thus,  the undersigned finds that, unlike *Adkins,* there are a sufficient number of people in Plaintiff's job unit in this region to allow the Plaintiff to have relevant comparators for assessing the employment actions taken against him in comparison to employment actions taken against other similarly situated employees for violating certain rules.

Accordingly, the scope of Plaintiff's discovery request shall be limited consistent with this finding, and as more fully set forth below for each discovery request at issue.

---

[1] The Court is aware that the Plaintiff views the two declarations as inconsistent, as the Declaration of Ms. Genelza "inflates" the number of clinical specialists in the region. See (D.E. 48 at 2).  However, the court does not read the declarations as inconsistent, and more importantly, reaches the same legal conclusion under either of the two declarations.

The undersigned notes, however, that this ruling is issued upon the unequivocal declarations of Ms. Genelza and Craig Helms regarding decision making and the lack of any substantial contrary evidence in the record.  As stated at the hearing, if evidence is uncovered during the discovery process that impugns the reliability of these declarations, Plaintiff may renew the motion to compel, and if granted, the Defendant will bear the expense of providing additional discovery on an expedited basis.

In addition, the facts of this case are somewhat unique in that, by all accounts, the Plaintiff lodged his initial discrimination complaint with Ms. Genelza, in the human resources office in San Francisco.  Plaintiff further alleges that Ms. Genelza did not pursue his complaint diligently, asked him if he wanted to confront the offending  co-worker himself, and referred to the Plaintiff derogatorily when speaking to Mr. Stevens about the Plaintiff's discrimination complaint  (D.E. 1 at 11-12).  Thus, under these allegations, Ms. Genelza's involvement in the investigation or processing of discrimination or retaliation complaints filed by other employees, whether in Plaintiff's employment unit or not, may indeed be relevant to Plaintiff's claim that Ms. Genelza improperly influenced the decision makers in this case in retaliation for Plaintiff making a discrimination complaint.  As stated in *Ferrell v. Masland Carpets, Inc.*, 97 F.Supp. 2d 1114, 1125-26 (S.D. Ala. 2000), "The Eleventh Circuit has repeatedly recognized that an employer may be held liable for employment discrimination if the actions of a neutral decision maker are somehow influenced  by the prejudice of a non-decision maker." *Citing*,  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir.1999); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir.1991); *Jones v. Gerwens*, 874 F.2d 1534, 1541 n.13 (11th Cir.1989).  Thus, as to the complaints of retaliation identified in the Declaration of Stacey Miller, the scope of discovery extends to all complaints of retaliation following

11

a complaint of race or national origin discrimination (See, discussion of claims of race

discrimination and retaliation, *infra*, pp., 16-17), where Ms. Genelza was involved in

either the investigation or processing of that claim.  There are a limited number of such

claims, and discovery therefore is not unduly burdensome.

2) Violation of Genentech Internal Policies

The Parties also disagree as to whether the Plaintiff should be allowed to obtain

discovery on persons who were disciplined for violations of any company rule or only

those rules which Plaintiff allegedly violated.  First, the undersigned notes that the

Parties disagree as to the basis for the Plaintiff's termination.  The Plaintiff asserts that

when he was terminated,  he was informed by Helms and Stevens that his termination

was due to violations of company policy, guidance policies created by the

Pharmaceutical Research and Manufacturers of America (PhRMA), regulations under the

Food and Drug Administration (FDA) and the Office of Inspector General's Compliance

Program Guidance fo Pharmaceutical Manufacturers (OIG).  *See* (D.E. 1 at 3).  Defendant,

on the other hand, asserts that Mr. Soto was terminated only for violating Genentech

Healthcare Compliance Procedures; by failing to obtain permission and approval  from

the Promotional Review Committee ("PRC") to disseminate promotional materials

created by Plaintiff and not created by Genentech.

Genentech further maintains that in cases alleging discriminatory discipline, a

plaintiff must provide examples of similarly situated comparators who were involved or

accused of the same or similar conduct yet were disciplined in different ways.

Genentech argues that pursuant to the Eleventh Circuit's ruling in *Burke-Fowler v.*

*Orange County Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006),  the quantity and quality of

the comparator's misconduct must be nearly identical to that of the plaintiff's

**12**

misconduct in order for a court to make a determination of whether the employees received different discipline.  Genentech therefore asserts that the scope of discovery should be limited to persons who were employed as clinical sales specialists supervised by Helms and Stevens, who violated the same policy that Plaintiff allegedly violated (D.E. 32 at 7-8).

However, although Defendant correctly states the holding in *Burke-Fowler*, the instant matter is procedurally distinct from that case, as the Eleventh Circuit's review therein arose after the district court granted summary judgment in favor of the employer, finding that the plaintiff failed to identify employees who were involved in or accused of the same or similar conduct and were disciplined in different ways. *See, Burke-Fowler*, 447 F.3d at 1323.  Thus, the court in that matter did not address the scope of discovery that a plaintiff would be entitled to under the facts of that case.  In fact, even though the plaintiff in that case ultimately was unsuccessful in identifying appropriate comparators to survive a motion for summary judgment, presumably the plaintiff was allowed to obtain discovery on other employees who were disciplined for other infractions, in an effort to meet his burden of showing discriminatory discipline.

Similarly, in *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), a case cited by the Defendant at the hearing on the Motion to Compel, the reviewing court examined whether the plaintiff had established a prima facie case of discrimination, after the district court granted summary judgment on behalf of the employer.  Thus, again, the issue was not the scope of discovery that the plaintiff was entitled to obtain in an effort to establish her prima facie case, but whether plaintiff had presented similar

13

comparators for plaintiff to establish discriminatory discipline.[2]

In addition, as correctly argued by Plaintiff, how other Genentech employees were disciplined after they committed the same or similar infraction as Plaintiff, may be relevant for the Plaintiff to show that the reasons for his termination were pretextual.  As stated in *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42 (W.D.N.Y.  1986), a case cited by Plaintiff in its Motion, "... [c]omparative information is necessary to afford plaintiff a fair opportunity to develop her case and may be relevant to establish the pretextual nature of defendant's conduct," *citing*,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir.1975), [and] "a plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim." *Id. citing*, *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 592 (5th Cir. 1978).

Further, as noted previously, the Parties disagree as to Genentech's  reasons for Plaintiff's termination.  Mr. Soto maintains that he was told that he was terminated not just for a violation of the procedures related to the PRC, but also for violating other rules

---

[2]The Defendant has also cited to *Gehring v. Case Corp.*, 43 F. 3d 340 (7th Cir. 1995) for support of this argument but the district court in that case, concluded, after examining the personnel files of other employees, that the privacy rights of other employees would be invaded if the personnel files were turned over, and more importantly, that the plaintiff wanted to use the evidence not for purposes of comparison but to put the defendant's personnel practices on trial.  Id. At 342.  The reviewing court determined that the district court did not abuse its discretion is curtailing the plaintiff's discovery on those grounds.  In this case, there has been no suggestion that Mr. Soto seeks to obtain other personnel files for the purpose of putting Genentech's personnel practices on trial, but rather that Plaintiff seeks to find other Genentech employees who disciplined differently than Plaintiff, in order to support Plaintiff's pretext argument.  Thus, *Gehring* is factually distinct and not dispositive of the appropriate scope of Plaintiff's discovery herein.

and regulations that applied to pharmaceutical sales.  As such, the Plaintiff is entitled to discover information about employees who allegedly violated regulations and rules related to the solicitations of physicians, whether such rules and regulations are found in  Genentech's Internal Healthcare Compliance Practices, guidance policies created by the Pharmaceutical Research and Manufacturers of America (PhRMA), regulations issued by  the Food and Drug Administration (FDA) and/or regulations or rules issued by the Office of Inspector General's Compliance Program Guidance fo Pharmaceutical Manufacturers (OIG).  Once the discovery is provided, Plaintiff will be able to argue that certain violations are sufficiently similar to be considered; and, Defendant will be able to argue that the evidence is irrelevant.

### 3) Temporal Scope

Defendant also argues that the Plaintiff's requests should be limited to a time frame reasonably related to the allegations in the Plaintiff's Complaint.  Defendant asserts that the relevant time frame is when Plaintiff was employed by Genentech, between December 2004 and May 2006.

The Plaintiff counters that in discrimination cases, courts have allowed broad discovery.  As noted by the district court *in Mawulawde v. Board of Regents of University System of Georgia*, 2007 WL 2460774 *10 (S.D. Ga. 2007), "[a]lthough courts have permitted discovery periods as long as eight to ten years, the norm in employment discrimination cases seems to be anywhere between three and five years."

In this case, the Plaintiff was hired by Defendant on December 13, 2004 and was terminated on May 22, 2006.  The Plaintiff has sought information and documents in its discovery requests  ranging from January 1, 2003 until the present time.  The undersigned finds that such requests, which seek information for less than six years, is

not outside of the range of acceptable discovery scope in employment discrimination claims.  Thus, the temporal scope of Plaintiff's discovery requests shall extend from January 1, 2003 until the present time.  The Defendant must supplement any of its responses wherein it did not provide information or documents that covered this time frame.

### 4)    Scope of Complaints Alleging Retaliation

Defendant also argues that the Plaintiff's discovery should be limited to claims of discrimination and retaliation related to national origin.  However, as conceded by the Defendant at the hearing, claims of national origin are often mislabeled or identified as race discrimination claims, and thus, the Plaintiff's request for discrimination related to race, as well as national origin, should properly be permitted.

In addition, as noted in *Meeks v. Computer Assoc. International*, 15 F.3d 1013, 1021 (11th Cir. 1994), retaliation is a separate offense under Title VII. *(citing*, 42 U.S.C.A. § 2000e-3(a); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491 (11th Cir.1989)).[3]   To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination, so long as she had a reasonable good faith belief that the discrimination existed. *Id. (quotations omitted).* Rather, to establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is

---

[3]While Plaintiff's Complaint only alleges violations of the Florida Civil Rights Act, the Eleventh Circuit has stated, "... Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998)(citations omitted). Consequently, the analysis of Title VII case law in this opinion applies to Plaintiff's FCRA claims.

some causal relation between the two events.  *Olmsted v. Taco Bell Corp.*, 141 F.3d

1457, 1460 (11th Cir.1998) (citing *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021

(11th Cir.1994)). Once a plaintiff has established a prima facie case, the employer then

has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged

employment action. *Olmsted*, 141 F.3d at 1460; *Meeks*, 15 F.3d at 1021. The ultimate

burden of proving by a preponderance of the evidence that the reason provided by the

employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff.

*Olmsted*, 141 F.3d at 1460.

Thus, for purposes of establishing a retaliation claim, the scope of the discovery

may be different than the scope for establishing a discrimination claim as the plaintiff is

not attempting to show that persons in the same protected racial or national origin class

were treated differently, but rather that other persons who were engaged in statutorily

protected expression were subjected an adverse employment action, while other non-

protesting employees were not.  In this case, Mr. Soto has alleged that he was retaliated

against for making a discrimination complaint.  Thus, in order to establish his retaliation

claim, the Plaintiff seeks to discover whether others who also made discrimination

complaints were also terminated or disciplined by Genentech after making such

complaints.  Thus, for these purposes it does not matter whether the underlying

discrimination complaint was exactly the same as the Plaintiff's, and therefore such

information is relevant to the Plaintiff's retaliation claim, and Defendant must respond to

Plaintiff's request accordingly.

      B.    Specific Requests

Having set forth the general parameters of the appropriate scope of discovery in

this matter, the undersigned will now consider each disputed discovery request, in turn:

1)   **Interrogatory Nos. 5 and 15**

In Interrogatory 5, Plaintiff sought information regarding employee disciplinary actions taken by Genentech for violation of company policies related to solicitation of physicians, and/or other policies issued by Pharmaceutical Research and Manufacturers of America (PhRMA), the Food and Drug Administration, the Office of the Inspector General's Compliance Guidance for Pharmaceutical Manufacturers from January 1, 2003 to the present.   Similarly, in Interrogatory 15, Plaintiff sought the identity of Genentech employees who violated the policies that Plaintiff was alleged to have violated but who were not terminated nor disciplined for those violations.

Genentech initially objected to interrogatory 5 on the grounds of vagueness, ambiguity, lack of relevance, overbreadth, burdensomeness and third party privacy interests. Genentech objected to interrogatory 15 on the grounds of vagueness, ambiguity, overbreadth, and third party privacy interests.    Genentech then filed Amended Responses that withdrew the third party privacy objections and responded to interrogatory 5 by stating that no clinical specialists who were supervised by Craig Helms and Kenneth Stevens were terminated for a violation of the policy that Plaintiff allegedly violated.  Similarly, for interrogatory 15, Defendant responded that there were no clinical specialists supervised by Craig Helms and Kenneth Stevens who violated the same policy that Plaintiff violated but were not terminated nor disciplined in connection with that violation between January 1, 2003 and the present.

Consistent with the analysis set forth in section II, A-1 above, as to Interrogatory Number 5,  the undersigned finds that the only substantial evidence is to the contrary that persons at the national office were sufficiently involved in the decision to terminate Mr. Soto to warrant allowing discovery to extend beyond Plaintiff's employment unit.

18

However, this ruling does not limit the Plaintiff from taking the depositions of relevant fact witnesses and inquiring into the involvement of others at the national level with regard to Mr. Soto's termination.  In addition, as stated at the hearing, if during the course of discovery, such as at the deposition of Ms. Genelza,  additional information is revealed that indicates managers or other employees at the national office were involved in the decision to terminate or otherwise discipline Mr. Soto, then the Plaintiff may renew his request for nationwide discovery and any expenses associated with that discovery, if Plaintiff's request is granted, shall be borne by the Defendant.

Further, to the extent that the Defendant has failed to provide information about clinical specialists supervised by Mr. Helms and Mr. Stevens who may have violated policies related to the dissemination of promotional materials or solicitations to physicians, whether those violations arose under Genentech's Healthcare Compliance Practices, or under rules and regulations promulgated by the Pharmaceutical Research and Manufacturers of America (PhRMA),  the Food and Drug Administration (FDA) and/or the Office of Inspector General's Compliance Program Guidance for Pharmaceutical Manufacturers (OIG), consistent with this Court's analysis in section II A2, the Defendant must provide Plaintiff with such information.

Finally, the Defendant must provide information responsive to the interrogatories for the temporal time frame as set forth previously, between January 1, 2003 until the present.

### 2)      Interrogatory Nos. 6, 7

Interrogatories 6 & 7 sought information regarding complaints made or law suits filed against Genentech alleging race or national origin discrimination or retaliation from January 1, 2003 until the present.

19

Genentech objected to both  interrogatories on the grounds of lack of relevance, overbreadth and  burdensomeness.   Genentech sought to limit the scope of these inquiries to persons within Plaintiff's employment unit and only to persons who alleged national origin discrimination and not race discrimination. *See*, (D.E. 35 at 11).   In its Amended Responses to Interrogatories 6 & 7, Genentech indicated that no persons within Plaintiff's employment unit, clinical specialists supervised by Craig Helms and Kenneth Stevens, lodged national origin discrimination or retaliation claims.

As discussed at the Hearing, and conceded by Defense counsel, the undersigned notes that complaints arising from national origin claims frequently overlap with those raised on the basis of race.  Accordingly, Defendant's responses should be amended to appropriately include both complaints regarding national origin and race, and retaliation related to those claims.

Further, as discussed previously in section II A 1, given Ms. Genelza's involvement in the investigation of Plaintiff's discrimination claim and her alleged comments regarding the Plaintiff thereafter, and in light of the Supplemental Declaration of Stacey Miller, wherein she identifies a total of thirty-one (31) internal complaints of discrimination that include a claim for retaliation between the years of 2005-2008 if Ms. Genelza was involved, the Defendant shall provide that information to the Plaintiff as it may be relevant to Plaintiff's claims of discrimination and retaliation, and is not overly burdensome for Defendant to produce.  Similarly, information regarding claims of retaliation that followed a claim for discrimination which were filed with an agency or alleged in a civil lawsuit between the years of 2005 and 2008, where Ms. Genelza was involved, shall be provided to the Plaintiff, as again Defendant has only identified eighteen (18) such claims and/or law suits, and has not demonstrated that providing the

information places an undue burden on the Defendant.

Based upon the Declaration that there was no reliable tracking system prior to 2005, the fact that Plaintiff was not hired until mid-December 2004, and considering the probative value of this information, the temporal scope is limited from 2005 to the present as to this information.

C.      Interrogatory No. 18

Interrogatory 18 sought the identity of all clinical specialists who were managed by Craig Helms or Kenneth Stevens from the date Plaintiff was hired to the present and for  information regarding their respective pay increases.

Genentech objected to this interrogatory on the grounds of vagueness, ambiguity, lack of relevance, overbreadth and  burdensomeness.   In its Amended Responses to the Plaintiff's Interrogatories however, the Defendant indicated that it would make available for inspection and copying documents reflecting the employees' identification number and the history of the employees' pay increases, but would not provide the names of the employees.

Notwithstanding that response, at the hearing, the Defendant argued that information regarding the pay raises of persons within the Plaintiff's work unit was irrelevant as this case does not involve allegations that the Plaintiff did not receive a pay raise due to discrimination.  Plaintiff, however, countered that the information regarding the employees and their salaries and pay increases was relevant to demonstrate that after the Plaintiff made a discrimination claim, that his pay increases were not as great as other salespersons in Plaintiff's unit, and such evidence would therefore show that Mr. Soto was retaliated against after he made a claim of discrimination.

The undersigned then inquired as to why the names of the employees were not

provided, and the Defendant agreed to provide the names of the employees for whom the pay information was requested.  As the Defendant indicated that the information would be provided and gave no objection to providing the names and pay raise information of the individuals, the undersigned directs the Defendant to seasonably amend its response to the Plaintiff's request.  Again, the Defendant shall provide the information which comports with the temporal scope set forth above which ranges between January 1, 2003 and the present.

        D.    <u>Interrogatory No. 20</u>

        Interrogatory 20 sought information pertaining to product communications approved  by the Defendant's Promotional Review Committee (PRC).  Genentech objected to this interrogatory on the grounds of vagueness, ambiguity, lack of relevance, overbreadth and  burdensomeness.  In addition, at the hearing, the Defendant argued that this information was not relevant as Plaintiff never sought approval from the board prior to disseminating the materials, which was the basis for Plaintiff's termination.

        Plaintiff countered that the information is relevant to Plaintiff's claim of pretext as it is Plaintiff's contention that the type of materials that Plaintiff disseminated to the customer were not the type of materials that were usually presented to the PRC for approval, and further that such information is necessary to determine whether there were any changes in the procedures to support a conclusion that the application of the approval requirements to Mr. Soto were pretextual.

        At the hearing, the undersigned concluded that information from Genentech's Promotional Review Committee that provided guidance to the overall sales force, which applied to Nutropin sales people, or communications that gave guidance specifically to Nutropin sales people, as to what materials had to be submitted, or not submitted to the

PRC for approval, would be relevant to the instant matter. However, as it was unclear how many documents might be responsive to this Request as Defendant failed to provide that information prior to the hearing, despite the assertion that the discovery request was burdensome.

Subsequent to the hearing, the Defendant submitted the declaration of Tim Kreidler which indicates that between the years of 2002-2007, Genentech used three separate databases to track the number of submissions to the Genentech Promotional Review Committee, and further, that the data from those sources indicates that eight-hundred and thirty-three submissions (833) were made to that Committee related to Nutropin and that the PRC approved nine-hundred and fifty-two (952) submissions related to the sale of Nutropin, during that same time frame. *See,* [D.E. 45-2].   Mr. Kreidler estimated that it would take approximately sixty-four hours to manually compile and verify the data from  the three data bases.

However, it remains unclear in what format the information is maintained and why the compilation and verification of such information would have to be done manually and would require over sixty hours to complete.   Thus, the undersigned finds that despite being given an additional opportunity to establish burdensomeness, Defendant has not met its burden.  The undersigned recognizes that there are a substantial number of communications identified.  To the extent that the claim of burdensomeness is based on the need to conduct additional investigation to reconcile the number of requests and the number of approvals, the undersigned will permit Defendant to limit its responses to the communications which it has identified in the databases rather than requiring additional searching.   In addition, in lieu of producing all communications at the outset, Defendant may initially provide the information from the three databases in the form of a

23

log, indicating the general subject matter of the submissions to, and approvals by the PRC and allowing Plaintiff to review the log and identify the communications it wants produced.  However, any such log must be sufficiently specific to allow Plaintiff to make such a determination.

      E.    <u>Request No. 2(k) and 2(l)</u>

      These Requests for Production sought personnel files of employees related to termination or discipline for violation of Genentech policies or other applicable laws and regulations related to pharmaceutical sales.  Genentech objected to these requests for production on the grounds of vagueness, ambiguity, lack of relevance, overbreadth and burdensomeness.

      As discussed *supra,* pp. 11-13, and in relation to Interrogatories 5 and 15, the undersigned finds that the Plaintiff is entitled to information that may extend beyond the identical conduct of the Plaintiff as this matter is at the discovery stage, and given that the information may appropriately assist the Plaintiff in establishing its claim for pretext. In addition, the Defendant has failed to demonstrate how the production of such documents is burdensome.  Accordingly, Defendant shall produce any personnel files of clinical specialists or senior clinical sales specialists, supervised by Craig Helms or Kenneth Stevens, who violated any rules, regulations and/or policies related to the solicitation of physicians or dissemination of promotional materials by the Nutropin sales force, or applicable to the Nutropin sales force, whether those rules were contained in Genentech's Healthcare Compliance Practices guidance policies, or were issued or created by the Pharmaceutical Research and Manufacturers of America (PhRMA), the Food and Drug Administration (FDA) and/or the Office of Inspector General's Compliance Program Guidance fo Pharmaceutical Manufacturers (OIG),

between January 1, 2003 to the present.

      F.     <u>Request Nos. 3, 4, 13 and 14</u>

      Requests for Production 3, 4, 13 and 14, sought the production of internal and external complaints made against Genentech for race or national origin discrimination or retaliation from January 1, 2003 until the present.  As discussed above,  in relation to Interrogatories 6 and 7, the Plaintiff's discovery should not be limited to national origin claims, and given Plaintiff's retaliation claim involving Ms. Genelza, Plaintiff's request may extend beyond Plaintiff's work unit.  Thus, for the reasons stated in connection with Interrogatories 6 and 7, Defendant shall produce those complaints identified in the supplemental Declaration of Stacey Miller, filed on October 8, 2008, where Ms. Genelza was involved in the investigation or processing of the claim.

      G.     <u>Request Nos. 20, 21, 22</u>

      These Requests sought information pertaining to training and educational materials related to the solicitation of sales for the pharmaceuticals sold by Genentech. According to the Defendant's Response to the Plaintiff's Motion to Compel, the Defendant has agreed to produce documents responsive to these requests, and thus the Motion to Compel as to these items only is denied as moot.

      H.     <u>Request Nos. 23, 24, 25 and 26</u>

      These Requests sought documents related to the violation of Defendant's policies and other laws and regulations governing pharmaceutical sales.   In particular, Request 23 and 24 seek various consulting agreements related to Nutropin.  In Request 25, Plaintiff seeks reimbursement records for gifts, entertainment, meals, etc., for persons solicited in the sale of Nutropin.  However, the Plaintiff has failed to demonstrate that such agreements are relevant to the allegations made by Mr. Soto.   The Plaintiff has

asserted that such documents may demonstrate that more serious violations were committed by clinical sales specialists that did not result in termination.  However, the undersigned finds that violations and/or breaches arising from the consulting agreements are not similar to the type of misconduct alleged to have been committed by the Plaintiff, herein, and therefore are not relevant, based upon the information presented to the court at this time.   Similarly, Request for Production 26 seeks documents relating to formulary dosing information.  The Plaintiff has not presented any information to indicate that this request is reasonably related to the Plaintiff's cause of action.   Accordingly, the Motion to Compel such documents is denied.

III.    <u>Sanctions</u>

Plaintiff has also sought an award of attorney's fees in its Motion to Compel.  The Defendant has asserted that such an award is unwarranted as Genentech's objections were substantially justified and made in good faith.

If a motion to compel "is granted . . . or requested discovery is provided after the motion was filed," the Federal Rules of Civil Procedure command that "the court shall, after affording an opportunity to be heard, require the party[,] deponent [or] counsel to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees."  But, if the court finds that "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust," the imposition of sanctions are not mandated.  Fed. R. Civ. P. 37(a)(4).

After a thorough review of the record, it appears that Genentech's objections were made in good faith.  Thus, under the totality of the circumstances, the undersigned finds that the imposition of sanctions is not justified at the present time.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED**

(D.E. 25) as described in the body of this Order, and Plaintiff's Motion for Sanctions is

**DENIED**.  Defendant shall comply with this Order on or before Friday, October 31, 2008.

**DONE AND ORDERED** in Chambers in Miami, Florida, on October 17, 2008.

_____

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
The Honorable K. Michael Moore, United States District Judge
All counsel of record